IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GILBERT P. MELENDREZ,**

    **Plaintiff,**

vs.                                                          **No. Civ. 09-756 BB/RLP**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

Plaintiff, Gilbert Melendrez ("Plaintiff" herein) appeals from the final decision of the Commissioner of the Social Security Administration denying his application for Supplemental Security Income benefits ("SSI" herein), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§1381-1383c. (Docket No. 17). This matter has been fully briefed by the parties (Docket No. 19) and has been referred to the undersigned for analysis and recommendation. (Docket No. 7).

I.    Statement of the Case

Plaintiff filed an application for SSI on October 9, 2003,[2] stating that he had been disabled since either August 7, 2003 or May 20, 1998 (Tr. 45, 55). Plaintiff alleged that his disability was caused by high blood pressure, depression, arthritis, hammer toes, alcoholism, back and foot pain, and residuals from a crushed right heel. (Tr. 45, 55). An Administrative Law Judge ["ALJ" herein]

---

[1]Pursuant to 28 U.S.C. §636(b)(1), within fourteen [14] days of being served with a copy of this Analysis and Recommended Disposition, either party may file written objections to such proposed Analysis and Recommended Disposition. A party must file any objection within the fourteen [14] day period if that party seeks appellate review of the Analysis and Recommended Disposition. Failure to timely file objection with the court will be deemed a waiver of appellate review. Hill v. SmithKline Beecham Corp.,393 F.3d 1111,1114 (10th Cir. 2004).

[2]Plaintiff filed a prior application for benefits which was denied on March 30, 2000. (Tr. 72). It does not appear that he sought further review of this denial.

conducted a hearing on April 18, 2005, and entered a decision denying Plaintiff's claim on May 19, 2005. (Tr. 9-18),  Plaintiff's request for review by the Appeals Council was denied, and he filed suit in this court.  On April 13, 2006, the District Court reversed the decision of the Commissioner, and remanded the case for additional proceedings.   In its Memorandum Opinion and Order dated April 13, 2006, the court held that the ALJ erred in disregarding the opinion of an examining physician, finding that Plaintiff's mental impairment was not severe at step two of the sequential evaluation process, and in applying the medical vocational guidelines conclusively despite Plaintiff's non-exertional impairment of depression.  (Tr. 384-395).  The District Court stated:

> [T]he Court expresses no opinion as to the extent of Melendrez' mental impairment, or whether he is or is not disabled within the meaning of the Social Security Act. The Court does not require any result.  This remand simply assures that the ALJ applies the correct legal standards in reaching a decision based on the facts of the case.  In all other respects, the Court affirms the ALJ's findings.

(Tr. 395).

A second hearing was held on October 10, 2006.  (Tr. 504-521).  Plaintiff's claim was denied in a decision dated May 31, 2007.  Plaintiff sought review by the Appeals Council which accepted review and  remanded Plaintiff's claim for a third hearing.  (Tr. 412-413).

The ALJ conducted a third hearing on May 22, 2008.  (Tr. 522-577). In a written decision dated April 29, 2009, the ALJ determined that  Plaintiff was  disabled, but denied his application finding that his alcohol and substance abuse was a contributing factor material to the determination of disability under the Social Security Act. (Tr. 291-315). On June 22, 2009, the Appeals Council denied Plaintiff's request for review of this decision.  (Tr. 278).  Plaintiff timely filed his complaint with this court on August 4, 2009, seeking review of the Commissioner's decision.

II.  Facts

Plaintiff was born on March 17, 1963. (Tr. 45). He is a high school graduate and obtained an AA degree in computer technology in 1994. (Tr. 61, 149, 506). His last regular employment ended in May 1998 when he was terminated from his job as a telephone operator. (Tr. 128, 55-56). Prior to that he had worked as a customer service operator for a utility company, in a copy room, and as a parts-man in a warehouse. (Tr. 56). He has had intermittent odd jobs since his last regular employment. (Tr. 135, 494, 506).

While Plaintiff has both physical and mental impairments, this Appeal raises no issue with regard to the assessment of his physical residual functional capacity.

Plaintiff is an admitted alcoholic (see, e.g., Tr. 427, 485) who has also used illicit drugs (see, e.g., Tr. 149-150, 275, 448). He started using alcohol and marijuana at age 13. (Tr. 149, 169). By self report, his use of cocaine started in his 30's and continued to 2004 (Tr. 149), his use of marijuana continued to 2005 (Tr. 448), and he continues to drink whenever he has the money to do so. (Tr. 512). He has been arrested multiple times for driving under the influence (Tr. 149, 427, 471, 550) and has been in numerous treatment programs for alcohol and/or substance abuse detoxification.[3] (Tr. 136, 470, 298).

Plaintiff was diagnosed as mildly depressed with many somatic complaints in October 1997. At that time he had recently lost a job, was drinking and having relationship problems with his girlfriend. (Tr. 144).

He next sought treatment for depression in May 1998, shortly after he lost his last regular

---

[3] The only record of alcohol or substance abuse treatment contained in the administrative record is a 3-day admission to Memorial Medical Center in August 2005 for alcohol detoxification. (Tr. 424-491). At least two in-patient admissions occurred prior to January 1999 (Tr. 136), and one in 2001. (Tr. 149-150).

job. (Tr. 137-138). He exhibited poor eye contact and flat affect, but was able to concentrate. Dr. J. Leos Flores, a physician at La Clinica De Familia, diagnosed situational depression and prescribed Zoloft. Id.    Plaintiff continued to complain of depression in early 1999, as well as increased alcohol consumption. (Tr. 133-136). By the end of February, he stated his depression was better (Tr. 132), and by April, his mood was noted as brighter and more optimistic. (Tr. 131). He voiced no complaints of depression during the remainder of 1999 (Tr. 125-129), but was referred to a counseling service, apparently to address continued alcohol abuse. (Tr. 125).

In January 2000 Plaintiff complained of stress and suicidal thoughts. He had increased his drinking after breaking up with a girlfriend and being thrown out of their home. (Tr. 120121). He had not been taking antidepressant medication for some period of time, and Zoloft was restarted. (Tr.120-121).

Plaintiff continued to take antidepressant medication (Tr. 136-138), and as of July 2002 stated he was "over depression," attributing his prior bout of depression to deaths and divorces in his family three years earlier.  (Tr. 235). He admitted that he continued to drink "an occasional 6 pack," and alcohol abuse was noted in his medical assessment. Id.   The following month he was seen for medication refills, and complained of headache, intermittent acid reflux and epigastric pain. Although the medical note does not explain why, or list any reported symptoms or complaints, he was assessed as depressed and he was again referred for counseling. (Tr. 233-234). There is no indication that he obtained counseling.

In March of 2003, Plaintiff complained of stress stemming from an inability to find work. He also had difficulties with transportation and was considering foot surgery. (Tr. 231). He was treated for dermatitis, restarted on hypertension medication and given a refill for an antidepressant. Id. In June 2003 was thrown to the ground by a neighbor, injuring his back. (Tr. 107). The

following month he sought care for back and leg pain stemming from this incident. (Tr. 229-230). In September 2003 he sought care for headache and arthritic pain. (Tr. 228-229).

Dr. James Schutte, PhD, performed a consultative psychological examination on Plaintiff on January 21, 2004. The history taken by Dr. Schutte revealed Plaintiff's substance and alcohol use/abuse, and the job history referred to above. As of the date of this evaluation Plaintiff admitted to drinking on a daily basis and to smoking marijuana. Dr. Schutte's mental status examination states in part:

> He was dressed casually and adequately groomed. . . he arrived . . . alone and was punctual for his appointment. . . .He was oriented in terms of person, place and time, and as able to provide all of his personal information. His cognitive functions appeared grossly intact and he was alert and responsive to his surroundings. His speech was clear and comprehensible, with no apparent deficits. No gross deficits of memory were noted. Attention and concentration appeared within normal limits during the evaluation, and no hyperactivity was noted. His mood was reserved and his affect was constricted. His thought processes were not delusional and he did not appear to be attending to internal stimuli during the interview. He was cooperative with this examiner and appeared open and willing to discuss his psychological functioning.

(Tr. 150).

Plaintiff told Dr. Schutte that he could attend to all of his daily living needs, although he had difficulty shopping because of an inability to carry heavy items, that he had few friends, felt others took advantage of him, but could "sometimes" relate to others appropriately. Dr. Schutte indicated that Plaintiff could follow simple storylines and simple instructions, and carry out simple tasks. (Tr. 151).

Dr. Schutte diagnosed Alcohol Dependence, Cannabis Dependence, and Cocaine Dependence (Axis I), and Antisocial Personality Disorder (Axis II), and assigned a GAF score of

50[4]. (Tr. 151). Dr. Schutte also prepared a Psychiatric-Psychological Source Statement of Ability to do Work-Related Activities, with the following abilities/limitations:

<u>Understanding and remembering instructions</u>:
 Detailed or complex instructions.......... **mildly limited[5] due to depressive disorder NOS**
 Very short and simple instructions....... not limited

<u>Sustained concentration and task persistence</u>:
 Ability to carry out instructions, attend and concentrate........................ **mildly limited due to depressive disorder NOS and Antisocial personality disorder**
 Ability to work without supervision........ **moderately[6] limited due to depressive disorder NOS and Anti-social personality disorder**

<u>Social interactions</u>:
 Ability to interact with public, coworkers and supervisors.................. **moderately limited due to Anti-social personality disorder**

<u>Adaptation</u>:
 Ability to adapt to changes in the workplace, be aware of hazards and react appropriately, and use public transport or travel to unfamiliar placed... **not limited.**

---

[4]Dr. Schutte utilized the DSM-IV-TR multiaxial system. Under this system, Axis I pertains to the diagnosis of clinical syndromes; Axis II pertains to the diagnosis of developmental or personality disorders; Axis III pertains to the diagnosis of physical disorders and conditions; Axis IV pertains to the severity of psychosocial stressors; Axis V assigns a global assessment of functioning (GAF)." <u>American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders</u> 27-34, 4th edition (2000) (DSM-IV-TR). A GAF of 41-50 involves "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social occupational, or school functioning. (e.g., no friends, unable to keep a job)." DSM-IV-TR, at p. 34.

[5]The form utilized by Dr. Schutte defines mild limitations as those which "do not significantly limit the individual from consistently and usefully performing the activity." (Tr. 152).

[6]The form utilized by Dr. Schutte defines moderate limitations as those which "support the conclusions that the individual's capacity to perform the activity is impaired but the degree/extent of the impairment needs to be further described." (Tr. 152).

> Alcohol or other substances of abuse:
>> Ability to function in work setting is affected by use of substances, and would be significantly improved if substance abuse stopped. **While the claimant does have personality and mood disorders, his primary impediment to work appears to be substance dependence.**

(Tr. 152-154). (Emphasis added).

Plaintiff was seen at St. Luke's Clinic on March 29, 2004, where he routinely received medication refills. (Tr. 224, 88). He was intoxicated at the time, and indicated that he had been drinking all week. He was given a limited amount of medication and encouraged to go to counseling. (Tr. 224).

Plaintiff had no further care related to his mental condition, other than medication refills, until August 8, 2005, when he was taken by ambulance to Memorial Medical Center for psychiatric evaluation. He had been drinking, arguing with and threatening family members, and threatening suicide. (Tr. 454, 446, 448, 450, 453). This event was triggered by his sister's refusal to buy him more beer. (Tr. 454). On admission he was intoxicated, tested positive for cannabis and had vague thoughts of suicide without plan. (Tr. 442, 447, 448, 450, 468, 485). Clinical assessment performed at the time of admission diagnosed MDD[7], recurrent, severe w/o psychotic features, Alcohol dependence (Axis I), Narcissistic traits, Borderline traits (Axis II) and assigned a GAF of 39.[8] (Tr. 455). Plaintiff was admitted to the psychiatric unit. (Tr. 449). He participated in group therapy on August 11, where he "appeared brighter and happier . . . (and) interacted well with his peers." (Tr. 434). Later that day, in a family therapy session, his family expressed concerns stating that he

---

[7] Major depressive disorder.

[8] A GAF of 31-40 is reflective of "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work....")". DSM-IV-TR, at p. 34 (bold-type emphasis deleted).

had previously been arrested for attempting to kill one of his nephews. The family wanted Plaintiff to enter an in-patient alcohol rehabilitation program. (Tr. 435). Plaintiff disagreed and became uncooperative and accusatory during the session. Id. The counselor wrote: "Plaintiff lacks insight. Blames all for his unfortunate life (illeg). He assumes no responsibility for his actions or behavior - persecutory ideations with paranoia towards his family. Immaturity apparent. Depressed affect/mood." (Tr. 346). Plaintiff was discharged from the hospital the same day. (Tr. 478). The discharge summary prepared by the attending physician, Ernest Flores, M.D., stated that Plaintiff was improved, ambulatory, eating well, non-suicidal, non-homicidal, and had agreed to go to counseling. (Tr. 485). His discharge diagnosis included Alcohol dependance, alcohol withdrawal syndrome, dysthymia, chronic pain syndrome (Axis I) and Narcissistic personality disorder (Axis II), with an assigned GAF of 60.[9] (Tr. 485).

Plaintiff did not follow up with counseling for his alcohol addiction (Tr. 496, 493), and on October 10, 2006 he testified that he continued to drink when he had the money to do so as a way to treat his depression. (Tr. 512).

### III.   May 22, 2008  Administrative Hearing

Two witnesses testified at the third administrative hearing held May 22, 2008, medical consultant Florien Birkmayer, M.D., and vocational expert Daniel Moriarty.

Dr. Birkmayer is board certified in both Psychiatry and in Addiction Medicine, and is the director of the Dual Diagnosis Clinic at the University of New Mexico Health Sciences Center. (Tr. 527-528). He reviewed all medical evidence available and testified at length both on general topics,

---

[9]A GAF score of 51 to 60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupation, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

such as the criteria for specific diagnoses and the effects of alcohol or substance withdrawal, and specifically as to his opinions regarding Plaintiff. His testimony can be summarized as follows:

- The effects of various drugs and alcohol can mimic most primary (Axis I) psychiatric diagnoses. To distinguish between them you look at the time relationship, that is, whether symptoms of the primary mental disorder predated the use of drugs or alcohol. If such symptoms predate drug or alcohol use, you could argue drugs and alcohol are not the cause. (Tr. 529-530).

- Individuals who exhibit some but not all criteria for a specific personality disorder, are sometimes referred to as having "traits" of that disorder (e.g., Narcissistic personality traits) or a disorder "NOS" (e.g., Personality Disorder NOS), the latter being the correct term in DSM-IV nomenclature. Use of "NOS" can also indicate that the evaluator is not sure whether or not the disorder is due to a substance. (543-545).

- Symptoms of early withdrawal from alcohol include severe anxiety and depression. These symptoms can last for several weeks (Tr. 533) and up to six months and longer. (Tr.536). Symptoms from cannabis withdrawal include anxiety and forms of anxiety that include paranoia and panic attacks. (Tr. 549).

- The consultation notes for Plaintiff's August 2005 hospitalization do not document the DSM-IV criteria for personality disorders, and further, such a diagnosis cannot be made when the patient is suffering from the direct physiological effects of a substance (e.g., undergoing detoxification). (Tr. 546-547, 539).

- Plaintiff clearly meets the criteria for alcohol and cannabis dependence, based upon his use of substances since age 13, several hospitalizations requiring detoxification,

       multiple DUIs, and medical and social consequences of substance use. (Tr. 550-551).

- Plaintiff's medical record contains no evidence or history documenting antimonial traits predating Plaintiff's use of alcohol and cannabis. (Tr. 556).

- Plaintiff's medical record documents no period of sustained abstinence during which one could distinguish between substance abuse depression and major depressive disorder or anxiety disorder. (Tr. 551-552).

- Although he cannot completely discount the presence of an Axis I(mood) or Axis II (personality) disorders due to a paucity of records or reports predating alcohol and substance abuse, he believes Plaintiff suffers from a substance induced mood disorder. He basis this opinion on the lack of any documented period of sobriety from which to determine that his symptoms are caused by an Axis I disorder such as depression or anxiety. In terms of a personality or conduct disorder, although this is harder to "tease apart," there is no evidence of record to indicate that he met the criteria for such a disorder prior to age 13, when he started drinking and using cannabis. (Tr. 551-552, 555, 559).

The ALJ posed a hypothetical question to the vocational expert containing the following mental limitations in addition to his exertional limitations[10]:

> He can understand, remember and execute moderately complex instructions and tasks in work requiring no more than minimal collaboration with co-workers and supervisors and no more than infrequent incidental and superficial contact with the

---

[10] The exertional RFC, which as not been challenged, was defined as: Able to lift and carry 20 pounds occasionally, ten pounds frequently; stand and/or walk for a total of three hours in an eight-hour day; sit for six hours in and eight-hour days, push/pull with upper and lower extremities within these parameters; climb ramps and stairs, ropes, ladders and scaffolds, balance, stoop, kneel, and crawl occasionally; no crouching; no manipulative, visual or communicative limitations; must avoid concentrated exposure to hazardous moving machinery and unprotected heights.

public in work that is object focused.

(Tr. 567-568).

The VE testified that such an individual could not perform Plaintiff's past work, but could perform the jobs of file clerk[11], parts assembler[12] and laundry folder[13]. (Tr. 568).

III.    The ALJ's Findings

The ALJ found Plaintiff had "severe" physical and mental impairments. (Tr. 295-304, 311). Relying on the testimony of Dr. Birkmayer and his references to the DSM-IV-TR, she found that Plaintiff suffered from alcohol and marijuana dependence (Tr. 296) and depressive symptoms consistent with substance induce mood disorder (Tr. 300); that Plaintiff did not suffer from a primary mood disorder or a pre-existing personality disorder, and that his demonstrated behaviors or traits associated with personality disorders were caused by substance abuse. (Tr. 296-298, 308-309).   She found that Plaintiff's impairments did not meet or equal a listed impairment, and that with ongoing use of substances, he lacked the minimum mental ability to perform simple work at any level of exertion.  (Tr. 300, 302- 309).  The ALJ then addressed whether Plaintiff's drug and alcohol use was a contributing factor, material to the determination of disability.  She found that it was, citing to Dr. Birkmayer's opinion that Plaintiff's depression and anxiety were substance induced,  not the result of a primary mental disorder  (Tr. 307-8) and Dr. Schutte's opinion, that even if Plaintiff did suffer from personality and mood disorders, his primary impediment to work appeared to be substance dependence.  (Tr. 307, referring to Tr. 254).  The ALJ found that with

---

[11] Dictionary of Occupational Titles ["DOT" herein], ¶206.387-054, semi-skilled, 1800 position is the region, 250,000 positions nationally.  (Tr. 568).

[12] DOT ¶739.687-030, unskilled, 1,700 positions in the region, 300,000 positions nationally. (Tr. 568).

[13] DOT ¶361.587-010, unskilled, 3,200 positions in the region, 350,000 positions nationally.   (Tr. 568).

11

abstinence, Plaintiff's mental RFC would increase significantly, and that he would be able to

- understand, remember, and execute moderately complex instructions and tasks;
- interact with coworkers and supervisors in work requiring no more than minimal collaboration;
- have no more than infrequent, incidental and superficial contact with the public,
- work in a work environment that is object focused.

(Tr. 310, 312).

IV.     Standard of Review

This court does not reweigh the evidence. Casias v. Secretary of Health and Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Rather, I review the ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. "However a decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Id. (Quotation and brackets omitted).

V.      The Sequential Evaluation Process

The Commissioner applies a five-step sequential evaluation process to determine whether a claimant is disabled. See Williams v. Bowen, 844 F.2d 748, 750 (10th Cir.1988). Here the ALJ found Plaintiff disabled at Step 5 of the sequential evaluation process, based upon his physical and mental impairments, including alcoholism and drug abuse. (Tr. 309-310, 312).

VI.     Materiality Finding

The Contract with America Advancement Act of 1996 provides that "an individual shall not be considered to be disabled [under either Title II or XVI of the Social Security Act] . . . if

alcoholism or drug addition would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §1382c(a)(3)(J); accord 20 CFR §416.935. If an administrative law judge finds that the claimant is disabled and had medical evidence of the claimant's drug addiction or alcoholism, the administrative law judge "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 CFR §416.935(a). The "key factor" in making this determination is whether the claimant would still be found disabled if he stopped using drugs or alcohol. 20 CFR §416.935(b)(1). If the claimant's other impairments would remain disabling in the absence of alcohol or drug abuse, that abuse is not a contributing factor material to the finding of disability, and the claimant is disabled under the provisions of the Social Security Act. If the claimant's remaining impairments would not be disabling absent alcohol or drug abuse, then alcohol or drug abuse is a contributing factor material to the finding of disability, and the claimant is not disabled under the provision of the Social Security Act. Brown v. Apfel, 192 F.3d 492, 498 (5th Cir.1999); Drapeau v. Massinari, 255 F.3d 1211, 1214 (10th Cir. 2001); 42 U.S.C. §423(d)(2)( C); 20 C.F.R. § 416.935.

Plaintiff has the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. Brown v. Apfel, 192 F.3d at 498; Ball v. Massanari, 254 F.3d 817, 821 (9th Cir.2001); Doughty v. Apfel, 245 F.3d 1274, 1279-1280 (11th Cir.2001); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000); Underwood v. Comm'r of Soc. Sec., 2010 WL 424970, *6 (N.D. Ohio 2010) (Slip copy); Smith v. Astrue, No. 06-1271-MLB, 2007 WL 2377113, *5 (D. Kan. Aug. 10, 2007).

VII.    Issues presented

Plaintiff contends that the ALJ, failed to correctly apply the "law of the case" doctrine and the erred in finding that his drug or alcohol abuse was a contributing factor material to the finding

13

of disability. (Docket No. 17, p. 3).

VIII.   Discussion

    A.   Law of the Case.

Plaintiff argues that pursuant to the law of the case doctrine, the ALJ was compelled to find that he suffered from severe depression and antisocial personality disorder, and accordingly, the ALJ erred in finding that Plaintiff suffered from a substance induced mood disorder. (Docket No. 17, p. 3).

The law of the case doctrine requires that an "administrative agency, on remand from a court, [must] conform its further proceedings in the case to the principles set forth in the judicial decision. . ." Poppa v. Astrue, 569 F.3d 1167, 1170 (10th Cir. 2009) quoting Copart, Inc. v. Admin. Review Bd., U.S. Dep't of Labor, 495 F.3d 1197, 1201 (10th Cir.2007) (quotation omitted). The law of the case doctrine only "applies to issues previously decided, either explicitly or by necessary implication." Id. The only issues decided in the prior District Court opinion were (1) that Dr. Schutte's opinion could not be disregarded, (2) Plaintiff had established a "severe" impairment at step two of the sequential evaluation process, and (3) it was error to apply the medical vocation guidelines conclusively. There was no explicit or implicit decision by the district court concerning Plaintiff's "mental impairment, or whether he is or is not disabled within the meaning of the Social Security Act." (Tr. 395). Accordingly, the law of the case doctrine is not implicated in this appeal.[14]

---

[14]Plaintiff states that the ALJ utilized the testimony of Dr. Birkmayer "to disregard findings of several doctors, as reviewed by the United States Magistrate Judge in the Memorandum Opinion and Order," and in so going acted contrary to the Commissioner's regulation regarding the evaluation of opinion evidence. (Docket No. 17, p. 6). Without further elucidation, I construe this comment to refer to Plaintiff's argument on the applicability of the law of the case doctrine.

14

B.      Materiality of Alcohol and Drug Abuse, and Plaintiff's "Abstinent" RFC.

In Salazar v. Barnhart, 468 F.3d 615, 623 (10th Cir.2006) the Tenth Circuit Court of Appeals discussed the analytical process an ALJ must utilize prior to concluding that drug and alcohol addiction is material to the conclusion a claimant is disabled. Salazar focused upon a teletype issued by the Commissioner pertaining to "situations where a claimant has one or more other mental impairments in addition to [drug and alcohol addiction]." Id. The Court of Appeals noted that the teletype "stresses the need for careful examination of periods of abstinence." Id. at 623. Plaintiff does not dispute that there are no periods of abstinence to evaluate.

The Tenth Circuit in Salazar also stated that the teletype directs that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that drug and alcohol abuse is not a contributing factor material to the disability determination. Id. If the record is "devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if he stopped using drugs or alcohol, an ALJ should 'find that [drug and alcohol addiction] is not a contributing factor material to the determination of disability.'" Id. at 624.

Dr. Birkmayer testified that because of the lack of any period of sustained sobriety to evaluate, it was his opinion that Plaintiff's mental impairment was due to alcohol and substance abuse, and mood disorders caused by alcohol and substance abuse, not from a primary mental disorder. Further, because there was no medical evidence to support the presence of a personality disorder prior to Plaintiff's abuse of alcohol and drugs, it was his opinion that Plaintiff did not have a personality disorder. This is substantial evidence that Plaintiff mental impairment is caused by alcohol and substance abuse, not another mental disorder.

More importantly, however, there is substantial evidence to support the ALJ's assessment

of Plaintiff's RFC if he were abstinent.

Plaintiff's only objection to the ALJ's evaluation of his RFC if abstinent is in the area of his ability to work without supervision and interact with the public, coworkers and supervisors. (Docket 17, at 6-7). The RFC with abstinence found by the ALJ in this area is supported by Dr. Schutte's opinion and other substantial evidence.

Dr. Schutte stated that Plaintiff's ability to interact with the public, coworkers and supervisors was moderately limited, but that the degree of impairment required further description. He then further described that impairment, stating Plaintiff's ability to function in a work setting "is affected by use of substances and would be *significantly improved* if substance abuse stopped. While the claimant does have personality and mood disorders, his primary impediment to work appears to be substance dependance." (Tr. 153-154, emphasis added).

In addition to Dr. Schutte's assessment, the ALJ noted:

> [N]otes from medical providers indicate that Mr. Melendrez can interact adequately on a superficial basis, in that no other medical provider or examiner has noted inappropriate behavior or interaction during office visits. Progress notes from June 23, 2004 describe Mr. Melendrez as alert and pleasant (citing Tr. 223). Another noted he was "[a]lert and appropriate during the exam" (citing Tr. 170). Consultative examiner James W. Schutte, Ph.D., remarked, "He was cooperative with this examiner and appeared open and willing to discuss his psychological functioning." (citing Tr. 150).

(Tr. 302).

The ALJ also referred to Dr. Flores' assessment of Plaintiff's GAF on August 11, 2005:

> Dr. Flores did not render an opinion regarding Claimant's ability to engage in specific work activity. However, his discharge diagnosis includes a Global Assessment of Functioning (GAF) of 60 (footnote omitted) (Citing Tr. 485). Thus, with all the mental impairments he diagnosed, which included substance abuse disorders, he believed Claimant's symptoms were not more than moderately severe, or that Claimant had no more than moderate difficulty in functioning.

(Tr. 303).

Residual functional capacity is an administrative finding of what an individual can still do despite his limitations. 20 C.F.R. §416.945(a). An ALJ must provide a "narrative discussion describing how the evidence supports" her conclusion regarding RFC. Soc. Sec. Ruling (SSR) 96-8p, 1996 WL 374184 at *7 (1996). I find that the ALJ's assessment of Plaintiff RFC, if abstinent, is supported by substantial evidence, and that the ALJ complied with both applicable regulations, Social Security Rulings, the provisions of the Emergency Teletype and Tenth Circuit law in assessing that RFC.

  C. Misquoting of the Record by the ALJ.

Plaintiff contends that the ALJ's decision is undermined because she misquoted Dr. Birkmayer, referring to the ALJ's statement that Dr. Birkmayer testified that "a personality trait does not rise to the level of a mental disorder." (Docket No. 17, p. 8, citing Tr. 309).

Dr. Birkmayer testified that under official DSM-IV nomenclature "there is no such thing as a trait," and went on to explain that where practitioners utilize the term "trait," they are describing an individual whose presentation only partially satisfies the criteria for a disorder. (Tr. 543-544). While it would have been more accurate for the ALJ to state that "a personality trait does not rise to the level of a personality disorder," I do not find that this undermines her analysis or decision.

  D. Whether the ALJ ignored Plaintiff's testimony.

Plaintiff contends that the ALJ erred in assessment of his RFC by failing to discuss his account of how his mental impairment affects his functioning. This argument is spurious. The ALJ recounted Plaintiff's testimony, both as to his physical and mental impairments and found that his testimony was not entirely credible, tying her credibility finding to substantial evidence of record. (Tr. 301-304). Plaintiff has not challenged the ALJ's credibility determination. Furthermore, Plaintiff's depression and anxiety are consistent with Dr. Birkmayer's diagnosis of substance

induced mood disorder and/or early withdrawal from alcohol or cannabis. (Tr. 530-533, 536-537, 548-549, 551).

      E.      Whether the ALJ ignored relevant and probative evidence, and "cherry-picked" the evidence.

While correctly asserting that the ALJ "must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects," (Docket. 17, p. 7-8), Plaintiff does not point out any uncontroverted evidence that the ALJ did not rely upon, or what significantly probative evidence she rejected. The ALJ painstakingly evaluated the medical record and gave specific, legitimate reasons for the weight she assigned to all competing opinions in the record. (Tr. 296-300). It is the province of the ALJ to resolve such conflicts in the evidence. Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988). I find therefore, that she complied with the provisions of 20 C.F.R. §416.927 pertaining to the evaluation of opinion evidence.

**IX.**    **Recommended Disposition**.

For the reasons stated herein, I recommended that Plaintiff's Motion to Reverse and Remand for Rehearing (Docket No. 17) be denied and that the decision of the Commissioner, denying Plaintiff's Application for Supplemental Security Income benefits be affirmed.

                                                                       Richard L. Puglisi
                                                                       Chief United States Magistrate Judge